1

2

3

BRIAN WILLIAMS
CDCR# J62961
P.O. BOX 689/C WING-112L
Correctional Training Facility
Soledad, Ca. 93960-0689

Number of pages ___ 4 5 ___
Received on ___ 12-11-2023 ___
Scanned/emailed on 12-11-2022
by ___ Martinez ___ at ___ CTF ___
for the Northern District of California.

4

5

6

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

7

8

9

10

11

12

13

14

15

16

**BRIAN WILLIAMS**

**Plaintiff[s],**

**v**

**California Department of Corrections and
Rehabilitation, California Correctional
Healthcare Services in it's individual and
official capacity as J. MARQUEZ, in his
individual and official capacity as a
Lieutenant at Correctional Training Facility,
J. BARROSO in his individual and official
capacity as a Lieutenant at the Correctional
Training Facility**

**Defendant[s].**

**Case No. 23-cv-03584-YGR(PR)**

**CIVIL RIGHTS ACT COMPLAINTFOR
VIOLATION OF 42 U.S.C.SEC. 1983
COMPLAINT FOR**

**1. DELIBERATE INDIFFERENCE
2. ADA VIOLATIONS**

  **MOTION TO REOPEN**

**DEMAND FOR JURY**

17

18

19

20

21

22

23

24

25

26

27

28

1

Plaintiff Williams BRIAN WILLIAMS, is a California resident (refered to herein after "WILLIAMS") hereby complains against Defendant's and each of them, and demand for trial, as follows:

### NATURE OF THE ACTION

This is an action brought by Williams against the Sacramento County Public Defender's Office, for damages based on defendant's breach of contract, breach of his fiduciary duty, and unjust enrichment.

I.

### JURISDICTION & VENUE

1. This action is brought in the United States District Court Northern District of California pursuant to diversity of jurisdiction provided by 28 U.S.C. section 1332 to recover damages against defendants each of them for the violation of Williams constitutional rights.

### II

### THE PARTIES

2. Plaintiff, BRIAN WILLIAMS, CDCR #J62961, herein after "Williams", at all times relevant herein, is currently incarcerated at the Correctional Training Facility, in Soledad, California 93960.

3. Defendant California Department of Corrections and Rehabilitations, herein after "Corrections", at all times relevant to this complaint, was acting as an employer of the Marquez and Barroso.

4. Defendant California Correctional Health Care Services herein after "Health Care Services", at all times relevant to this complaint, was acting as an employee of California Department of Corrections and Rehabilitations. "Health Care Services" is being sued individually

and in its official capacity.

5. Defendant Okeke, herein after "Okeke ", at all times relevant to this complaint, was acting as Williams primary healthcare provider. Okeke is being sued individually and in her official capacity.

6. Defendant J. Marquez, herein after "Marquez", at all times relevant to this complaint, was acting as an employee of the California Department of Corrections and Rehabilitations. "Marquez" is being sued individually and in his official capacity.

.   7. Defendant J. Barroso, herein after "Barroso", at all times relevant to this complaint, was acting as an employee of California Department of Corrections and Rehabilitations. Barroso Is being sued individually and in his official capacity.

8. The amount in the controversy, exclusive of the interest and Court cost does exceed the 25,000 jurisdictional minimum limit of this Court. Accordingly, this Court has jurisdiction over the case at bar.

9. The United States District Court, for the Northern District of California is an appropriate venue under 28 U.S.C. section 1391(b)(2) because  the defendant's actions described herein were directed a Williams and were intended to deprive Williams of the complete performance of the contract.

Williams alleges:

## FIRST CAUSE OF ACTION

10.   Defendant's, each of them, were employed in Alameda County, California, within the above-named judicial district.

11. Williams is informed and believes and on such information and belief alleges, that at all times pertinent herein, each defendant was the agent of each other of the

other defendant[s], and acted within the time, purpose and scope of said.

12. Williams incorporates herein by references paragraphs 1thru 11, inclusive and 10 of the first cause of action as though set forth in full here at and further alleges;

13. Acting or failing to act with indifference to a substantial risk of serious ham to a prisoner is the equivalent of recklessly disregarding that risk. Prisoners retain the essence of human dignity inherent in all persons. Respect for dignity animates the <u>Eighth Amendment</u> prohibition against cruel and unusual punishment. The basic concept underlying <u>U.S. Const., 8th Amend.</u>, is nothing less than the dignity to people. A prison that deprives prisoners of basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society.

14. On February 10, 2022, Plaintiff was interviewed by an unknown Sergeant regarding his CDCR 1824 Reasonable Accommodation Request, during which he complained CTF Doctors do not want to send him to see an outside doctors/specialist regarding the physical and neurological problems he was having. He went on to explain that he has shortness of breath, fatigue, dizziness when standing, and heart palpitations. He explained to the Sergeant that his pain and breath difficulties are son bad that he spend most of his time in bed and that he believes his ailments are connected to his having been infected with COVID-19.

15. On February 17, 2023, the "CCHCS" issued a Reasonable Accommodation Panel (RAP) Response stating in relevant part: "[I]nmate Williams was interviewed on February 10, 2022, during which time he ... stated he has health issues since his COVID-19 infection ... Inmate Williams stated when he reaches to the top bunk he gets severe pain and breathing difficulties are so bad he spends much of his time in bed. Custody provided an intern accommodation and he was provided a low bunk pending the Reasonable Accommodation Panel

(RAP) review. The RAP response concluded your CDCR 7410 from July 18, 2019, was reviewed and is still medically appropriate. There is "no" medical indication for a low bunk accommodation at this time.

16. On March 25, 2022, Williams filed a Health Care Grievance CDCR 602 asserting in part: "[R]ecently, appellant received a *Reasonable Accommodation Panel (RAP) Response*, stating in relevant part: ...Williams explained after having contracted COVID-19 he has repeatedly complained to his PCP regarding the chest pains and the problems he is having with standing.

17. Williams explained his daughter works for the VA in Illinois and after describing his symptoms with one of the doctors. She was told it sound like he is suffering from "Long COVID." Williams further explained that the ADA Amendment Act passed by Congress in 2008 (ADAAA) broadened the definition of disability originally provided in the 1990 ADA legislation to include injuries that limit "*major life activities*" such as *standing*, *walking*, *bending* ... 28 C.P.R. $ 35.108(c)(1)(i). He lamented none of the aforementioned are codified in the July 2021 guidelines. Williams concluded the denial of his accommodation request violates this rights under the Eighth and Fourteenth Amendments, as well as Title II of the (ADA) 42 U.S.C. $$ 12101 et seq. *A copy of the Health Care Grievance Attachment CDCR 602 HC A is attached as Plt.'s Ex A.*

18. On May 27, 2022, Plaintiff received a document entitled Institutional Level Response from the California Correctional Health Care Services stating in part: "The issue: ADA (Disagreement with RAP Decision), Low bunk accommodation." The Institutional Response went on to assert: "In your CDCR 602 HC, Health Care Grievance, you explained the decision, action, condition, omission, policy, or regulation that has had a material adverse effect upon your

health or welfare for which you seek administrative remedy." *A copy of the ADA Disagreement with RAP Decision is attached as Plt.'s Ex B.*

19. On October 14, 2022, Williams received a rule violation report for "[R]efusing to Accept Assigned Housing…" Pursuant to Title 15 Sec. 3005(c). According to Correctional Officer A. Tellez "[O]n Friday, June 29, 2022 Williams was given an order to move from his assigned cell (lower bunk) because the lower bunk he was assigned to was needed to accommodate inmates from X Wing (closure). Williams refused to move by stating "I'm not moving, you can go ahead and give me the 115 (RVR) but I am not moving.

20. The matter proceeded to a disciplinary hearing on July 13, 2022, in which Lieutenant Marquis served as the hearing officer. Williams appeared and participated in the hearing. He also provided a statement claiming Williams explained to Marquez he could not have refused to accept assigned housing. Because Tellez did not apprise him of the cell he was expected to move to Williams went on to explain to Marquez that since having contracted COVID 19 he has consistently complained to his primary healthcare provider of he "[s]hortness of breath, fatigue, dizziness when standing, and heart palpitations hat he experiences.. And that he should not have been issued a rules violation report. Instead, he should be moved to Y-Wing to be accommodated. And that previously Y-Wing had been designated an American with Disabilities Act (ADA) wing. The 115 against him should be dismissed. He also noted that after having taken the Pfizer vaccine, the vaccine damaged his heart. *A California Department of Corrections and Rehabilitation Disciplinary Hearing Results dated July 13, 2022, attached as Plt.'s ExC.*

21. On October 14, 2022, Williams received a rule violation report for "[R]efusing to Accept Assigned Housing…" Pursuant to Title 15 Sec. 3005(c).  According to Correctional Officer Casi "[O] n Friday, October 14, 2022, while assigned as C-Wing Floor 1 Officer, I was

performing cell compaction in C-Wing and approached C-Wing Cell 112...I gave a direct order to inmate Williams to move to C-Wing Cell 107u with inmate Tuner, Charles J80487.... Inmate Williams replied, "I'm going to refuse."

22. The matter proceeded to a disciplinary hearing on October 28, 2022, in which Barroso served as the hearing officer. Williams appeared and participated in the hearing. He also provided a statement claiming "[c]orrectional staff accommodated him by granting his February 10, 2022, accommodation request. And that the California Correctional Health Care Services rescinding of that accommodation is a continuation of the retaliatory actions that the California Correctional Health Care Services has taken against Williams since 2019.

23. Williams explained to Barroso that in 2019 his lower bunk chrono was taken from him after he began to complain about the substance that Dr. Frederick (his then "PCP") injected into the Keloid only to leave a "5" inch scar across his chest. And that there is no mention of Williams having been given this shot in his medical history report. He explained the absence of any mention of the aforementioned shot in his medical history leaves him to believe that he was experimented on without his permission.

24. Williams went on to explain the California Correctional Health Care Services refusal to accommodate him violates the ADA. Because not only is he suffering from a condition which is now know as "POTS." But also, he has been complaining to his "PCP" that the vaccine da[maged] his heart, and he now has trouble breathing, however, she does not listen to him. A *CDCR Disciplinary Hearing Results, Dated October 28, 2022, attached as Pit's Ex. D.*

25. The foregoing demonstrates that the CCHCS, Okeke, Marquez, and Barroso showed deliberate indifference to Williams serious medical needs. Because since having contracted COVID 19 his medical file is saturated with complaints of problems with  prolonged standing,

bending, fatigue, heart palpitations and body aches. All of which are ADA qualified mobility disabilities.

## **SECOND CAUSE OF ACTION**

26. Williams incorporates herein by references paragraphs 1 thru 25, inclusive and 25 of the first cause of action as though set forth in full here at and further alleges;

27. On August 14, 2022, Williams filed a California Department of Corrections and Rehabilitations Health Care Grievance Form 602 arguing in relevant part. "[R]ecently, President Biden has designated Long-COVID as a disability under the American with Disabilities Act (ADA) Section 504 and Patients Protections and Affordable Care Act (Section 1557)." He argued every since he contracted COVID-19 here at the Correctional Training Facility he has consistently complained to his PCP of shortness of breath, dizziness upon standing and irregular rhythms; and that his heart problems were exasperated by his having taken the Pfizer vaccine. He contended further that his case falls squarely within the second prong of the **Depp** test. As articulated by the Court of Appeals, for the Ninth Circuit in (**Depp v. United States 217 F.3d 1262, 1265 (9th Cir. 2000).** *A copy of the Health care grievance CDCR 602 is attached as Plt.'s ExE*

26. On or about November 3, 2022, from the California Correctional Health Care Services, Williams received a document titled a "[R]easonable Accommodation Panel (RAP) Response. The section titled Summary of Inmate's 1824 Request states as follows: "[I]nmate Williams states he has shortness of breath, fatigue, dizziness, and heart palpitations that he believes to be connected with the Covid infection. He States he also has excruciating pain navigating to the upper bunk. Inmate Williams is requesting: (1) An explanation for his heart palpitations. (2) a Low bunk. The RAP response was: CDCR 7410 from July 18, 2019, was reviewed and is still medically appropriate. There is no indication for a low bunk

accommodation at this time. *A copy of the Reasonable Accommodation Panel RAP Response, dated November 1, 2022 containing the stamp "Treat as Original" and California Correctional Health Care Services Comprehensive Accommodation Formulary Regarding Bottom Bunk Guidelines, July 2021 are attached as Plt's Ex. F)*

27. On November 26, 2022, Williams forwarded the California Correctional Health Care Services Correspondence and Appeals Branch a correspondence explaining in detail: [T]he ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and to provide clear, strong, consent, enforceable standards addressing such discrimination. 42 U.S.C. Sec. 12010(b)(1)(2), Williams explained Since having contracted the SARS-Cov-2 virus he has consistently complained to his so-called ",primary healthcare provider" about the joint pains, dizziness he experiences during prolonged standing.  The problems he has with reaching, and difficulty breathing. In addition, to the "heart problems" he has consistently experienced since taking the Pfizer vaccine. Williams citing **Updike, 870 F.3d at 951 n.6** went on to explain it is axiomatic that an entity's duty to look into and provide a reasonable accommodation may be triggered when the need for accommodation is obvious, even if no request is made.

28. On or about February 17,"2023, Williams received a response from California Correctional Health Care Services, Headquarters Level Response, stating in part, "There is no recent documentation that you have attempted to access health care services utilizing the approved process for concerns related to your functionality or inability to perform your activities of daily living." "Although the primary care provider did not document a medical indication warranting a lower bunk accommodation, you are currently assigned to a lower bunk." *The*

*California Correctional Health Care Services, Headquarters Level Response, dated February 14, 2023, attached as Plt's Ex G).*

29.  Williams submits contrary to the California Correctional Health Care Services, Appeals Branch representation that" [t]here is no recent documentation that you have attempted to access health care services utilizing the approved process for concerns related to functionality or inability to perform your activities of daily living." As noted above, as far back as April of 2022 Williams filed a Reasonable Accommodation Request CDCR Form and that this request was temporarily granted.

30. Williams contends the California Department of Corrections and Rehabilitation maintains a de facto unconstitutional informal custom, practice or pattern of permitting, ignoring, enabling and condemning the California Correctional Healthcare Service's ability to engage in conduct that discriminated on the basis of disability in violation of Title II of the Americans with Disability Act. By failing to update its Comprehensive Accommodation Formulary regarding Bottom Bunk Guidelines, and failing to reasonably accommodate inmates who has physical and mental impairments that are connected to their Covid infection.

31. Williams contends the fact that the California Correctional Healthcare Services failed to update its Comprehensive Accommodation Formulary Regarding Bottom Bunk Guidelines. This failure encourages the dereliction of CCHCS duty to accommodate eligible inmates without the slightest expectation of consequences of discipline.

32. Williams contends as a result of the California Correctional Health Care Services refusal to update its Comprehensive Accommodation Formulary Regarding Bottom Bunk Guidelines. The defendant violated the U.S. Department of Health & Human Services, Guidance on 'Long-Covid' as a Disability pursuant to ADA, Section 504, and Section 1557.

33. Williams contends that the California Correctional Healthcare Services has a widespread and longstanding practice and policy of allowing its employees to discriminate against inmates with legitimate disabilities… as a result of Defendant's negligent conduct in failing to accommodate Williams after he contracted the SARS-Cov-2 Virus. The defendants violated sections 504 and 1557 of the ADA.

34. Williams submits, these discriminatory practices and policies are allowed to fester and continue because of California Department of Corrections and Rehabilitation's culture and DNA of discriminating against African American inmates. And that Defendant's discriminatory conduct was a substantial factor in Williams receiving the Rule Violation Report (RVR) under Cal. Code Regs., Title 15 Sec. 3005(c)

35. Williams contends after he became infected with the viruses he suffered a disability. As a result of his disability he is entitled to the protections under Title II of the Americans with Disabilities Act.

36. Williams contends as a result of the Defendant's acts and omission[s], he suffered anxiety when hearing keys, mental anguish, and that these difficulties has led to loss of sleep and other injuries to his mental health and physical well being.

37. Williams alleges the California Correctional Health Care Services refusal to accommodate Williams is partially based on its racially biased belief that African Americans aged more slowly than whites, African Americans have less sensitive nerve endings, African Americans have smaller brains, African Americans have less efficient respiratory system, and that African Americans feel less pain.

38. Williams submits it is well documented that Blacks endure longer wait times than Whites when seeking treatment, and Black claims of pain are taken less seriously than Whites, so

Black medical histories are less likely to reflect their true medical needs than Whites who have historically been given greater medical attention.

39. Williams contends that California Department of Corrections and Rehabilitations has allowed a custom, policy and practice to exist, whether express or implied, oral or written, that allowed all conduct outlined in this complaint and that fostered an environment that allowed and permitted the refusal to accommodate to occur, all creating liability under the laws of the State of California, the Constitution of the State of California, the laws of the United States, and the United States constitution.

## LEGAL CLAIMS

Williams re-allege and incorporate by reference paragraphs 1-39

40. Williams has demonstrated here in above, the Defendants were deliberately indifferent to his serious medical needs, and as a result the defendants violated the ADA.

41. Wherefore, Williams prays for judgment in favor of Williams and against Defendant[s] California Department of Corrections and Rehabilitations and the California Corrections Healthcare Services, Marquez and Barroso.

## FIRST AND SECOND CAUSE OF ACTIONS

For special damages alleged herein.

1. For declaratory relief in the form of a declaration from CDCR that it will update its

2. For compensatory damages as to all Defendants including the sum of $250,000 or an amount to be determined according to proof at trial;

3. For punitive damages in the amount of 100,000 from both Marques and Barroso.

4. All cost and disbursements of this action

5. All attorney's fees incurred in prosecuting this action pursuant6 to 42 U.S.C. 1988

6. The right to amend this complaint as warranted by the evidence and fact finding.

7. For costs of suit incurred in this action as to all Defendants; and

8. For such other and further relief as the Court deems proper.

TRIAL BY JURY IS HEREBY DEMANDED

Respectfully Submitted,

Brian Williams

**STATEMENT OF VERIFICATION**

I Brian Williams, declare under the penalty of perjury, pursuant to the laws of the State of California on my information and belief the statement made in this 42 U.S.C. 1983 complaint are true and correct. Executed on this 8th day of December 2023, at the Correctional Training Facility, in Soledad, CA 93960.

Respectfully submitted,

BRIAN WILLIAMS

# EXHIBIT "A"1-2

11-7-2022 MV

**TREAT AS ORIGINAL**

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE**
CDCR 602 HC (Rev. 10/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

| STAFF USE ONLY | Expedited? ☐ Yes ☑ No | Tracking #: CTF HC 22000194 | |
|---|---|---|---|

H. MORALES, RN

Signature                                    4/4/22
Date

Staff Name and Title (Print)

If you think you have a medical, mental health or dental emergency, notify staff immediately. If additional space is needed, use Section A of the CDCR 602 HC A Health Care Grievance Attachment. Only one CDCR 602 HC A will be accepted. You must submit this health care grievance to the Health Care Grievance Office for processing.  Refer to California Code of Regulations (CCR), Title 15, Chapter 2, Subchapter 2, Article 5 for further guidance with the health care grievance process.
**Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First, MI): | CDCR #: | Unit/Cell #: |
|---|---|---|
| **WILLIAMS, Brian** | **J62961** | **CW-112L** |

**SECTION A:** Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy: **Recently, the Appellant received a Rea-sonable Accommodation Panel (RAP) Response, stating in relevant part:**

"**[Y]our PCP last evaluated you on February 16, 2022. Your clinical exami-nation and EKG showed no signs of acute coronary sydrome ... There is no medical indication for a low bunk accommodation at this time. (See atta-ched California Correctional Health Care Services Comprehensive Accommoda-tion Formulary regarding Bottom Bunk Guidelines, July 2021.)**

**The Appellant submits his PCP may evaluated him on February 16, 2022 and his recent EKG allegedly showed no signs of acute coronary syndrome.**

**For the following reasons, the appellant questions his so-called PCP ability to uphold her Hippocratic oath. First, a after having contracted COVID-19. Appellant repeatedly complained about his chest pains and the**

Supporting Documents Attached. Refer to CCR 3999.227 ☐ Yes ☐ No

| Grievant Signature: Brn Williams | Date Submitted: **March 25, 2022** |
|---|---|

BY PLACING MY INITIALS IN THIS BOX, I REQUEST TO RECEIVE AN INTERVIEW AT THE INSTITUTIONAL LEVEL.

**SECTION B: HEALTH CARE GRIEVANCE REVIEW INSTITUTIONAL LEVEL: Staff Use Only**      Is a CDCR 602 HC A attached? ☑ Yes  ☐ No

This grievance has been:

☐ Rejected (See attached letter for instruction):  Date: _____  Date: _____

☐ Withdrawn (see section E)

☑ Accepted      Assigned To: _Medical_  Title: _HC4RN_   Date Assigned: 4/6/2022  Date Due 4/7/2022

Interview Conducted?      ☐ Yes  ☑ No      Date of Interview: _____      Interview Location: _____

| Interviewer Name and Title (print): | Signature: | Date: |
|---|---|---|
| Reviewing Authority Name and Title (print): POSSON CMEO CTF | Signature: | Date: 5/9/22 |

**Disposition: See attached letter**    ☐ Intervention    ☑ No Intervention

HCGO Use Only: Date closed and mailed/delivered to grievant:   MAY 27 2022

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: |
|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ Patient asked questions |
| ☐ DPH☐ DPV☐ LD | ☐ Equipment☐ SLI | ☐ Patient summed Information |
| ☐ DPS☐ DNH | ☐ Louder☐ Slower | Please check one: |
| ☐ DDP | ☐ Basic☐ Transcribe | ☐ Not reached*☐ Reached |
| ☐ Not Applicable | ☐ Other* | *See chrono/notes |

4. Comments: _____

RECEIVED CTF APR 04 2022 STAFF HCGO

COMPLETED CTF MAY 27 2022 HCGO

RECEIVED HCGO ONLY DEC 02 2022

COMPLETED HCCAB FEB 14 2023

TREAT AS ORIGINAL

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE ATTACHMENT**
CDCR 602 HC A (10/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

**STAFF USE ONLY**

Tracking #: CTF HC 22000 194

Attach this form to the CDCR 602 HC, Health Care Grievance, only if more space is needed. Only one CDCR 602 HC A may be used
Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

Name (Last, First, MI):

**WILLIAMS, Brian**

| CDCR Number: | Unit/Cell Number: |
|---|---|
| J62961 | CW-112L |

SECTION A | Continuation of CDCR 602 HC, Health Care Grievance, Section A only (Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy):

the problems he had with standing.

Appellant submits his daughter works for the VA in Illinois and after describing his symptoms to one of the doctors there. She was told not only does it sound like he is suffering from "Long COVID," but also myocarditis as a result of my being vaccinated. Keeping with CDCR policy his PCP cannot tell me this.

It is Appellant's belief that California Correctional Health Care Services is a rogue entity--who does not believe that the neither the ADA, California Constitution, nor the Eighth Amendment to the United States Constitution applies to it. His position is buttressed by the fact that ADA Amendments Act passed by Congress in 2008 (ADAAA) broaden the definition of disability originally provided in the 1990 ADA legislation to include injuries that limit "major life activities" such as standing, walking, bending, and caring for oneself. 28 C.F.R. § 35.108(c)(1)(i). None of the aforementioned are codified in the July 2021 guide[lines]. The fact that (RAP) Response acknowledged Appellant requested reasonable accommodation--because he experiences shortness of breath, fatigue, dizziness, and that at times it is excruciatingly painful for him to reach the top bunk. All of which are sign that he suffers from "Long COVID."

The denial of Appellant's accommodation request violates his rights under the Eighth and Fourteenth Amendment, as well as Title II of the (ADA), 42 U.S.C. §§ 12101 et seq.

Grievant Signature: Brian Williams          Date Submitted: March 25, 2022

SECTION B: Staff Use Only: Grievants do not write in this area. Grievance Interview Clarification. Document issue(s) clarified during interview.

Name and Title: _____          Signature: _____          Date: _____

RECEIVED CTF APR 04 2022 HCGO

COMPLETED CTF MAY 27 2022 HCGO

RECEIVED HCG DEC 02 2022

**STAFF USE ONLY**

COMPLETED HCCAB FEB 14 2023

# EXHIBIT "B"1-2



# CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES



**TREAT AS ORIGINAL**

**Institutional Level Response**

Closing Date: MAY 2 7 2022

To:       WILLIAMS, BRIAN (J62961)
          C  CW  1112001LP
          Correctional Training Facility
          P.O. Box 686
          Soledad, CA 93960-0686

Tracking #:  CTF HC 22000194

## RULES AND REGULATIONS
The rules governing these issues are:  California Code of Regulations, Title 15; Health Care Department Operations Manual; Mental Health Services Delivery System Program Guide; California Department of Corrections and Rehabilitation Department Operations Manual.

## HEALTH CARE GRIEVANCE SUMMARY
In your CDCR 602 HC, Health Care Grievance, you explained the decision, action, condition, omission, policy, or regulation that has had a material adverse effect upon your health or welfare for which you seek administrative remedy.

| Issue | Description |
|---|---|
| Issue:  ADA ( Disagreement with RAP Decision ) | Disagreement with RAP decision 164451485539 |
| Issue:  Chrono Issues ( Bottom Bunk ) | Low bunk accommodation |

## INTERVIEW
Pursuant to California Code of Regulations, Title 15, Section 3999.228(f)(1), an interview was not conducted as you did not request one by initialing the appropriate box on the CDCR 602 HC, Health Care Grievance.

## INSTITUTIONAL LEVEL DISPOSITION

[X] No intervention.     [ ] Intervention.

## BASIS FOR INSTITUTIONAL LEVEL DISPOSITION
Your health care grievance package and health record, and all pertinent departmental policies and procedures were reviewed.  These records indicate:
- Per documentation in your medical record, your primary care provider has addressed your request for a lower bunk chrono appropriately.  Orders were placed for x-rays of your right hand, left knee and right hand finger.  A 14 day holter monitoring period has been completed. A thyroid scan has been ordered and is pending scheduling. Unfortunately, per your most recent evaluation by your provider on February 16, 2022 and per current CCHCS guidelines you do not meet medical criteria for a lower bunk chrono accommodation. If you have additional health care needs, you may access health care services by utilizing the approved processes in accordance with California Correctional Health Care Services policy.

---

Note 1:  The institutional level review is based on records available as of the date the Institutional Level Response is signed by the reviewing authority.
Note 2:  The closing date reflects the closed, mailed/delivered date of the health care grievance.
Note 3:  Permanent health care grievance document.  Do not remove from the health care grievance package.

RECEIVED
HCCAB
DEC 0 2 2022

CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES

TREAT AS ORIGINAL

B.WILLIAMS, J62961
CTF HC 22000194
Page 2 of 2

Per the Health Care Department Operations Manual, Section 3.6.2, Comprehensive Accommodation, accommodations designated as permanent do not require further review or renewal.  The accommodation may be revised or removed by the provider as indicated by the patient's status.  The accommodation may be updated or rescinded at any time, even if previously written as permanent.

Due to the Centers for Disease Control and Prevention recommendation for social distancing during the COVID-19 pandemic, some signatures or other notations on the CDCR 602 HC, Health Care Grievance, may be missing.  This does not indicate the health care grievance was not completely processed per California Code of Regulations, Title 15, Chapter 2, Subchapter 2, Article 5.

Per the Health Care Department Operations Manual, Section 3.6.1, Durable Medical Equipment and Medical Supply, the Primary Care Team shall reassess patients with Durable Medical Equipment at least annually.

You disagree with the Reasonable Accommodation Panel (RAP) Response, 1824 Log Number 164451485539.

While the health care grievance process is a means of setting forth your health care concerns, it is not a substitute for direct communication about your health with your health care providers.  You are encouraged to continue your care with your assigned health care providers and share with them new or additional clinical information about your conditions that you believe may affect your care.  However, California law directs your health care providers to offer and provide only the care they determine to be currently medically or clinically necessary for you, in accordance with appropriate policies and procedures.  Previous orders from other health care facilities or staff, input from health care consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current health care providers.

If you are dissatisfied with the Institutional Level Response, follow the instructions on the CDCR 602 HC, Health Care Grievance, and submit the entire health care grievance package for headquarters' level review. The headquarters' level review constitutes the final disposition on your health care grievance and exhausts your administrative remedies.

_____
S. Posson, D.O.
Chief Medical Executive
Correctional Training Facility

_____
5/27/22
Reviewed and Signed Date

---

Note 1:  The institutional level review is based on records available as of the date the Institutional Level Response is signed by the reviewing authority.
Note 2:  The closing date reflects the closed, mailed/delivered date of the health care grievance.
Note 3:  Permanent health care grievance document.  Do not remove from the health care grievance package.

CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**

RECEIVED
HCCAB
DEC 02 2022

# EXHIBIT "C"1-5



**CALIFORNIA DEPARTMENT of**
**Corrections and Rehabilitation**

# DISCIPLINARY HEARING RESULTS

| | | |
|---|---|---|
| Institution Name: Correctional Training Facility | Facility: CTF-Facility C | Log Number: 000000007200660 |
| Inmate Name: WILLIAMS, BRIAN | CDC #: J62961 | Bed Number: CTF-C - C CW 1 - 112001L |
| TABE Score: 09.4 | MH LOC: GP | DDP Status: NCF |

## DUE PROCESS

Rule Violation #: 3005(c)

Level: Serious

Specific Act: Refusing to Accept Assigned Housing-Delaying a PO

Offense Occurrence: 1st Occurrence

Offense Division: Division D

Violation Date: 06/29/2022

Violation Time: 12:50:00

Hearing Date: 07/13/2022

Hearing Time: 08:43:00

Did a laboratory confirm the evidence tested positive for Controlled substances?: N/A

Actions Taken

| Date | Time | Type/Reason | Staff | Elapsed Days |
|---|---|---|---|---|
| 06/29/2022 | 13:19:12 | RVR Ready for Review by Supv. | A. Tellez | 0 |
| 07/06/2022 | 15:11:04 | RVR Approved by Supervisor | O. Becerra | 7 |
| 07/08/2022 | 10:00:38 | RVR Classified | S. Handley | 9 |
| 07/08/2022 | 15:22:36 | Inmate Copy Served Initial Rules Violation Report | V. Binning | 9 |

All Time Constraints Met?: Yes         SHO/HO DDP Certified?: N/A

**Due Process Additional Information:**

## HEARING

○ Subject elected not to participate in the adjudication process by refusing to attend the hearing. An Informational Chrono was generated documenting the refusal to attend the hearing.
◉ Subject was Present, in good health and ready to proceed.

**Hearing Additional Information**

## DISABILITY

☐ Hearing   ☐ Vision   ☐ Mobility   ☐ Learning   ☐ Developmental/Cognitive

Reason for assignment of Investigative Employee:

**Investigative Employee Additional Information:**

## CONFIDENTIAL INFORMATION

Confidential Information Used: No

| Confidential Document Number | Author of Confidential Document | Date of Confidential Document | Reviewed by SHO/HO | Deemed Confidential | Reason(s) Information was Deemed Confidential |
|---|---|---|---|---|---|
| | | | | | ☐ Information which, if known to inmates, would endanger the safety of person(s). ☐ Information which, if known to inmates, would jeopardize the security of the institution. ☐ Specific medical or Psychological information which, if known to inmates, would be medically or psychologically detrimental to the inmate. ☐ Information provided and classified confidential by another governmental agency. ☐ A Security Threat Group debrief report, reviewed and approved by the debriefing subject, for placement in the confidential section of the central file. |

| Confidential Document Number | Confidential Source Number | Confidential Disclosure Form Issued | Sufficient Information Disclosed | Reason(s) Deemed Reliable |
|---|---|---|---|---|
| | | | | ☐ The confidential source has previously provided information which has proved to be true. ☐ Other confidential sources have independently provided the same information. ☐ The information provided by the confidential source is self-incriminating. ☐ Part of the information provided by |

CDCR SOMS

☐ Reinstate Suspended Sanctions

**Sanction Mitigation Additional Information:**

(Hearing officials are required to document whether a mitigation, based on a MH-A, is appropriate and the reasoning used to arrive at their decision.)

N/A

**Comments:**

Referred to Classification Committee UCC

For ☐ SHU Term Assessment ☑ Program Review ☐ Un-Assignment ☐ Substance Abuse Treatment

**Disposition Additional Information:**

## ENEMY CONCERNS

○ Not Applicable
◉ Subject states he/she does not have Enemy or Safety Concerns.
○ One or more of the inmates involved has stated there is lingering animosity towards one another. Therefore, the SHO has entered non-confidential separation alerts for the following inmates:
○ Based on the totality of circumstances and/or information garnered by staff, the Hearing Official has determined an enemy situation exists and ensured the below non-confidential separation alerts were entered:

## SECURITY THREAT GROUP

Security Threat Group Nexus?: No

**Security Threat Group Nexus Additional Information:**

## FINAL SECTION

| Contraband Type | Disposition | Disposition Comments |
|---|---|---|
|  |  |  |
|  |  |  |

**Additional Information:**

## CREDIT RESTORATION

☑ Subject was advised of his/her right to restoration of credits under CCR 3327, 3328, and 3329.

☐ Subject was advised Credit Forfeiture for a Division 'A', 'B' or 'C' offense will not be restored.

☑ At the conclusion of the hearing Subject was advised of the findings, disposition, and his/her right to appeal per CCR 3084.1.

**Hearing Official**

CDCR SOMS ISST136 - CDC 115

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Packages Privileges | 30 Days | Yes | ☑ | ☐ | ☐ | ☐ | 07/13/2022 | 08/12/2022 |
| Property Restrictions | 30 Days | Yes | ☑ | ☐ | ☐ | ☐ | 07/13/2022 | 08/12/2022 |
| Visiting Privileges | | | ☐ | ☐ | ☐ | ☐ | | |
| Contact Visiting Privileges | | | ☐ | ☐ | ☐ | ☐ | | |
| Contact Visiting (Permanent Loss) | | | | | | | | |
| Loss of Family Visits | | | ☐ | ☐ | ☐ | ☐ | | |
| Permanent Loss of Family Visits | | | | | | | | |
| Trust Account Hold | | | | | | | | |
| Mandatory Drug Testing | | | | | | | | |
| IEX Control Suit | | | | | | | | |

☐ Impose Suspended Sanctions          ☐ Reinstate Suspended Sanctions

**Comments:**

---

**Chief Disciplinary Officer**

**Comments:**

---

K. Binning

TITLE:
AW(A)

DATE:
08/18/2022

CDCR SOMS ISST126 - DISCIPLINARY HEARING RESULTS

**Comments:**

WILLIAMS was found Guilty of the RVR charge. All of the available evidence was reviewed and the Senior Hearing Officer (SHO) determined such weighed toward a Guilty Finding. In this case, WILLIAMS was given an order to move from his assigned cell/bunk due to him not having a lower bunk accommodation chrono. WILLIAMS refused to move by stating "I'm not moving, you can go ahead and give me the 115 (RVR) but I am not moving". WILLIAMS ADA Summary records (see scanned) were reviewed and indicated WILLIAMS does not have a lower bunk chrono assigned to him. The procedures/process of getting a medical evaluation for the purpose of a lower bunk chrono was explained to WILLIAMS by the SHO.

## MENTAL HEALTH ASSESSMENT CONSIDERATION

(Documentation of opinions to be used for consideration by the hearing official and the reasoning shall be documented in this section.)

**Comments:**

N/A

## EVIDENCE

The following evidence was used to support the findings:

AVSS Available: No

AVSS Impact:

**Comments:**

1. RVR written by Officer A. Tellez wherein it is documented WILLIAMS was given an order to move from his assigned cell (lower bunk) because the lower bunk he was assigned to was needed to accommodate inmates from X Wing (closure). WILLIAMS refused to move by stating "I'm not moving, you can go ahead and give me the 115 (RVR) but I am not moving".

2. Copies of WILLIAMS' DPP Disability / Accommodation Summary (see scanned).

3. WILLIAMS statement of "He (Officer Tellez) told me I was not assigned to the lower bunk and that my lower bunk chrono expired already. I got the COVID vaccine and it messed up my heart. I need a lower bunk. I was a medical experiment here at CTF. Medical staff are giving me a run around".

Items # 1 and #2 carry significant weight toward the Guilty Finding.

## DISPOSITION

| Sanction Type | Quantity | Mitigated | Interest of Justice | DDP | MH LOC | MH-A | Start Date | End Date |
|---|---|---|---|---|---|---|---|---|
| Credit Loss | 61 Days | Yes | ☑ | ☐ | ☐ | ☐ | | |
| Confined to Quarters Days | | | ☐ | ☐ | ☐ | ☐ | | |
| Confined to Quarters Weekends | | | ☐ | ☐ | ☐ | ☐ | | |
| Disciplinary Detention | | | ☐ | ☐ | ☐ | ☐ | | |
| Privilege | 0 | Yes | ☑ | ☐ | ☐ | ☐ | | |

CDCR SOMS 1257

# EXHIBIT "D"1-5



CALIFORNIA DEPARTMENT *of*
**Corrections and Rehabilitation**

# DISCIPLINARY HEARING RESULTS

| | | |
|---|---|---|
| Institution Name: Correctional Training Facility | Facility: CTF-Facility C | Log Number: 000000007232126 |
| Inmate Name: WILLIAMS, BRIAN | CDC #: J62961 | Bed Number: CTF-C - C CW 1 - 112001L |
| TABE Score: 09.4 | MH LOC: GP | DDP Status: NCF |

## DUE PROCESS

Rule Violation #: 3005(c)

Level: Serious

Specific Act: Refusing to Accept Assigned Housing-Delaying a PO

Offense Occurrence: 2nd Occurrence

Offense Division: Division D

Violation Date: 10/14/2022

Violation Time: 19:35:00

Hearing Date: 10/28/2022

Hearing Time: 16:10:48

Did a laboratory confirm the evidence tested positive for Controlled substances?: No

| | | Actions Taken | | |
|---|---|---|---|---|
| **Date** | **Time** | **Type/Reason** | **Staff** | **Elapsed Days** |
| 10/14/2022 | 21:42:06 | RVR Ready for Review by Supv. | R. Caasi | 0 |
| 10/14/2022 | 21:49:53 | RVR Approved by Supervisor | L. Garcia | 0 |
| 10/17/2022 | 11:09:39 | RVR Classified | R. Diaz | 3 |
| 10/19/2022 | 15:33:19 | Inmate Copy Served Initial Rules Violation Report | J. Rea | 5 |

All Time Constraints Met?: Yes        SHO/HO DDP Certified?: N/A

**Due Process Additional Information:**

## HEARING

○ Subject elected not to participate in the adjudication process by refusing to attend the hearing. An Informational Chrono was generated documenting the refusal to attend the hearing.
◉ Subject was Present, in good health and ready to proceed.

**Hearing Additional Information**

## DISABILITY

☐ Hearing  ☐ Vision  ☐ Mobility  ☐ Learning  ☐ Developmental/Cognitive

CDCR SOMS ISST136  SR

Reason for assignment of Investigative Employee:

**Investigative Employee Additional Information:**

## CONFIDENTIAL INFORMATION

Confidential Information Used: No

| Confidential Document Number | Author of Confidential Document | Date of Confidential Document | Reviewed by SHO/HO | Deemed Confidential | Reason(s) Information was Deemed Confidential |
|---|---|---|---|---|---|
| | | | | | ☐ Information which, if known to inmates, would endanger the safety of person(s). ☐ Information which, if known to inmates, would jeopardize the security of the institution. ☐ Specific medical or Psychological information which, if known to inmates, would be medically or psychologically detrimental to the inmate. ☐ Information provided and classified confidential by another governmental agency. ☐ A Security Threat Group debrief report, reviewed and approved by the debriefing subject, for placement in the confidential section of the central file. |

| Confidential Document Number | Confidential Source Number | Confidential Disclosure Form Issued | Sufficient Information Disclosed | Reason(s) Deemed Reliable |
|---|---|---|---|---|
| | | | | ☐ The confidential source has previously provided information which has proved to be true. ☐ Other confidential sources have independently provided the same information. ☐ The information provided by the confidential source is self-incriminating. ☐ Part of the information provided by |

CDCR SOMS ISGT106

Lesser Included Charge:

Level:

Offense Division:

Offense Occurrence:

**Comments:**

I have fully considered and weighed all the evidence provided during this hearing, as described herein. Inmate WILLIAMS has been found GUILTY of being in violation of CCR Section 3005 (c), specifically, "Refusing to Accept Assigned Housing-Delaying a PO." In this case Inmate WILLIAMS was given an order to move from assigned cell/bunk (CW-112L) TO C-Wing cell 107U. Inmate WILLIAMS refused by stating "I'm going to refuse." During the hearing Inmate WILLIAMS plead NOT guilty to the charges noting, he had a medical condition and needed a lower tier and lower bunk. Although, Inmate WILLIAMS claims he is not guilty of the charges; Inmate Williams did not presented any documents or evidence that will refute the reporting employee report. WILLIAMS ADA Summary and accommodation records in SOMS were reviewed and indicated WILLIAMS does not have a lower bunk chrono assigned to him or any other medical condition that will preclude him from moving to an upper bunk. The procedures/process of getting a medical evaluation for the purpose of a lower bunk chrono was explained to WILLIAMS by the SHO. This findings is based on the following:

## MENTAL HEALTH ASSESSMENT CONSIDERATION

(Documentation of opinions to be used for consideration by the hearing official and the reasoning shall be documented in this section.)

**Comments:**

## EVIDENCE

The following evidence was used to support the findings:

AVSS Available: No

AVSS Impact:

**Comments:**

1. RVR written by Officer R. Caasi wherein states in part "I gave a direct order to inmate Williams to move to C-Wing cell 107U with inmate Turner, Charles J80487. I informed Inmate Williams that bed space is needed and he will be receiving a rules violation report if he does not house with inmate Turner in C-Wing cell 107. Inmate Williams replied, "I'm going to refuse." I informed inmate Williams that he will be receiving a rules violation report for Refusing to Accept Assigned Housing". The SHO has placed a significant amount of weight to this evidence and has determined that it DOES support the charge and guilty finding.

2. WILLIAMS plead of NOT Guilty and His statement during the hearing. Although Inmate WILLIAMS claims he is innocent of the charge, he has not provided any evidence, witness or explanation that refutes Officer R. Caasi report. Officer clearly documents Inmate WILLIAMS refused to move when he was ordered to move. The SHO has placed a significant amount of weight to this evidence and has determined that it DOES support the charge and guilty finding.

The SHO read, reviewed and weighed all evidence presented in the RVR hearing to make his decision. The preponderance of evidence presented at the hearing DOES substantiate the charge and the finding of guilt.

## DISPOSITION

| Sanction Type | Quantity | Mitigated | Interest of Justice | DDP | MH LOC | MH-A | Start Date | End Date |
|---|---|---|---|---|---|---|---|---|
| Credit Loss | 61 Days | No | ☐ | ☐ | ☐ | ☐ | | |
| Confined to | | | ☐ | ☐ | ☐ | ☐ | | |

| Trust Account Hold | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Mandatory Drug Testing | | | | | | | | |
| IEX Control Suit | | | | | | | | |

Counseled Regarding Misconduct:  with reprimand

☐ Impose Suspended Sanctions                    ☐ Reinstate Suspended Sanctions

**Sanction Mitigation Additional Information:**

(Hearing officials are required to document whether a mitigation, based on a MH-A, is appropriate and the reasoning used to arrive at their decision.)

**Comments:**

Inmate WILLIAMS was assessed temporary Privilege Group "C" placement for a period of 30 days in accordance with local procedures. This action is pursuant to CCR 3315(f)(5)(B). Privilege Group "C" is limited to the following: No Family Visiting (overnight); Canteen Draw; No Special Purchases; No Quarterly Packages; No Entertainment Appliances; and No Telephone Calls unless a verified emergency exists.

Referred to Classification Committee  UCC

For ☐ SHU Term Assessment  ☑ Program Review  ☐ Un-Assignment  ☐ Substance Abuse Treatment

**Disposition Additional Information:**

Inmate WILLIAMS has two RVR for the same violation within the last six months.

## ENEMY CONCERNS

☐ Not Applicable
☑ Subject states he/she does not have Enemy or Safety Concerns.
☐ One or more of the inmates involved has stated there is lingering animosity towards one another. Therefore, the SHO has entered non-confidential separation alerts for the following inmates:
☐ Based on the totality of circumstances and/or information garnered by staff, the Hearing Official has determined an enemy situation exists and ensured the below non-confidential separation alerts were entered:

## SECURITY THREAT GROUP

Security Threat Group Nexus?:  No

**Security Threat Group Nexus Additional Information:**

## FINAL SECTION

| Contraband Type | Disposition | Disposition Comments | |
|---|---|---|---|
| | | | |

CDCR SOMS ISST126

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Loss of Pay | | | | | | | | |
| Canteen Privileges | 30 Days | No | ☐ | ☐ | ☐ | ☐ | 10/28/2022 | 11/27/2022 |
| Phone Privileges | 30 Days | No | ☐ | ☐ | ☐ | ☐ | 10/28/2022 | 11/27/2022 |
| Extra Duty | | | ☐ | ☐ | ☐ | ☐ | | |
| Yard Recreation Privileges | 30 Days | No | ☐ | ☐ | ☐ | ☐ | 10/28/2022 | 11/27/2022 |
| Day Room Privileges | 30 Days | No | ☐ | ☐ | ☐ | ☐ | 10/28/2022 | 11/27/2022 |
| Packages Privileges | 30 Days | No | ☐ | ☐ | ☐ | ☐ | 10/28/2022 | 11/27/2022 |
| Property Restrictions | 30 Days | No | ☐ | ☐ | ☐ | ☐ | 10/28/2022 | 11/27/2022 |
| Visiting Privileges | | | ☐ | ☐ | ☐ | ☐ | | |
| Contact Visiting Privileges | | | ☐ | ☐ | ☐ | ☐ | | |
| Contact Visiting (Permanent Loss) | | | | | | | | |
| Loss of Family Visits | | | ☐ | ☐ | ☐ | ☐ | | |
| Permanent Loss of Family Visits | | | | | | | | |
| Trust Account Hold | | | | | | | | |
| Mandatory Drug Testing | | | | | | | | |
| IEX Control Suit | | | | | | | | |

☐ Impose Suspended Sanctions          ☐ Reinstate Suspended Sanctions

**Comments:**

CDCR SOMS ISST126 - CDC A NUMBER

# EXHIBIT "E"1-11

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE**
CDCR 602 HC (Rev. 10/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

**STAFF USE ONLY**

Expedited?  ☐ Yes  ☑ No    Tracking #: CTF HC 22000452

J. OAA  SRN #    N. Roennmanven    Signature: Jacob C. On  NRoen    08/19/2022
Staff Name and Title (Print)    Date 10/25/22

If you think you have a medical, mental health or dental emergency, notify staff immediately. If additional space is needed, use Section A of the CDCR 602 HC A Health Care Grievance Attachment. Only one CDCR 602 HC A will be accepted. You must submit this health care grievance to the Health Care Grievance Office for processing. Refer to California Code of Regulations (CCR), Title 15, Chapter 2, Subchapter 2, Article 5 for further guidance with the health care grievance process.

Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

Name (Last, First, MI): **WILLIAMS, Brian**    CDCR #: J62961    Unit/Cell #: CW-112L

**SECTION A:** Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy:

According to the ADA, an individual is disabled if that individual (1) has a physical or mental impairment that substantially limits one or more of the individuals major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. **Deppe v. United 217 F.3d 1262, 1265 (9th Cir. 2000)** A major life activity is a function "such as caring for oneself, performing manual task, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R § 1630.2(i).

Recently, according to published reports President Biden has designated long-COVID as a disability under the Americans with Disabilities Act (ADA) Section 504, and the Patients Protections and Affordable Care Act (Section 1557). Examples of common symptoms of long-COVID include: Tiredness or

Supporting Documents Attached. Refer to CCR 3999.227  ☐ Yes  ☐ No

Grievant Signature: Brn Williams    Date Submitted: 8/14/2022

BY PLACING MY INITIALS IN THIS BOX, I REQUEST TO RECEIVE AN INTERVIEW AT THE INSTITUTIONAL LEVEL.

**SECTION B:** HEALTH CARE GRIEVANCE REVIEW INSTITUTIONAL LEVEL: Staff Use Only    Is a CDCR 602 HC A attached? ☐ Yes ☐ No

This grievance has been:    AUG 17 2022    NOV 02 2022
☑ Rejected (See attached letter for instruction): Date: ___    Date: ___
☐ Withdrawn (see section E)
☐ Accepted    Assigned To: ___    Title: ___    Date Assigned: ___    Date Due: ___
Interview Conducted?  ☐ Yes ☐ No    Date of Interview: ___    Interview Location: ___
Interviewer Name and Title (print): ___    Signature: ___    Date: ___
Reviewing Authority Name and Title (print): ___    Signature: ___    Date: ___

**Disposition:** See attached letter    ☐ Intervention    ☐ No Intervention

HCGO Use Only: Date closed and mailed/delivered to grievant: ___

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: |
|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ Patient asked questions |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ Patient summed information |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | Please check one: |
| ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached* ☐ Reached |
| ☐ Not Applicable | ☐ Other* | *See chrono/notes |

4 Comments: ___

RECEIVED CTF AUG 17 2022 STAFF HCGO
REJECTED CTF AUG 17 2022 HCGO
RECEIVED HCCAB SEP 13 2022
REJECTED HCCAB SEP 27 2022

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE ATTACHMENT**
CDCR 602 HC A (10/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

**STAFF USE ONLY**

Tracking #: *CTF HC 22000452*

Attach this form to the CDCR 602 HC, Health Care Grievance, only if more space is needed. Only one CDCR 602 HC A may be used.
**Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First, MI): | CDCR Number: | Unit/Cell Number: |
|---|---|---|
| WILLIAMS, Brian | J62961 | CW-112L |

**SECTION A:** Continuation of CDCR 602 HC, Health Care Grievance, Section A only (Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy):

fatigue, shortness of breath, headaches, dizziness on standing, fast bea-
ting or heart pounding (known as **heart palpitatins**). President Biden also
designated "heart-palpitations" as a disability. And that under the 'A.D.-
A' people who are suffering from **heart-palpitations** 'MUST' be accomodated.

Eversince the appellant contracted COVID-19 here at CTF Central he has
consistently complained to his PCP of the shortness of breath, dizziness,
upon standing and **irregular heart rhythms** that he has had problems with.
The appellant submits his heart palpitations were exasperated by his hav-
ing taken the **Pfizer** vaccine.

The appellant contends his case falls squarely within the second prong
of the **Deppe** test. Because his medical record is saturated with complaint
of "**heart pal[pi]tations**" and he is currently on medication as a result
of "**heart pal[pi]tations**." Failure to grant appellant's request for a
lower-bunk accommodation request would not only violate Title III of ADA
(42 U.S.C. §§ 12181-12189) (**Title III**). But also, violate the Unruh Act,
which provides that "[a]ll persons within the jurisdiction of this state
... no matter what their disability ... are entitled to the full and
equal accommodations...." (Civ. Code, § 51, subd. (b).)

| Grievant Signature: *Bn Williams* | Date Submitted: *8/14/2022* |
|---|---|

**SECTION B:** Staff Use Only: Grievants do not write in this area. Grievance Interview Clarification. Document issue(s) clarified during interview.

Name and Title: _____   Signature: _____   Date: _____

RECEIVED CTF AUG 17 2022 HCGO

REJECTED CTF AUG 17 2022 HCGO

RECEIVED STAFF USE ONLY HCCAB SEP 13 2022

REJECTED HCCAB SEP 27 2022

REJECTED CTF NOV 02 2022 HCGO

# HHS.gov
### Civil Rights

U.S. Department of Health & Human Services

# Guidance on "Long COVID" as a Disability Under the ADA, Section 504, and Section 1557

Although many people with COVID-19 get better within weeks, some people continue to experience symptoms that can last months after first being infected, or may have new or recurring symptoms at a later time. 1 (#footnote1_kskyzk)  This can happen to anyone who has had COVID-19, even if the initial illness was mild.  People with this condition are sometimes called "long-haulers."  This condition is known as "long COVID." 2 (#footnote2_sktgjm3)

In light of the rise of long COVID as a persistent and significant health issue, the Office for Civil Rights of the Department of Health and Human Services and the Civil Rights Division of the Department of Justice have joined together to provide this guidance.

This guidance explains that long COVID can be a disability under Titles II (state and local government) and III (public accommodations) of the Americans with Disabilities Act (ADA), 3 (#footnote3_gsjtc7t)  Section 504 of the Rehabilitation Act of 1973 (Section 504), 4 (#footnote4_y5wxcup)  and Section 1557 of the Patient Protection and Affordable Care Act (Section 1557). 5 (#footnote5_7cmg3lr)  Each of these federal laws protects people with disabilities from discrimination. 6 (#footnote6_c8hj6tk)  This guidance also provides resources for additional information and best practices.  This document focuses solely on long COVID, and does not address when COVID-19 may meet the legal definition of disability.

The civil rights protections and responsibilities of these federal laws apply even during emergencies. 7 (#footnote7_8g8ms5z)  They cannot be waived.

## 1.  What is long COVID and what are its symptoms?

According to the Centers for Disease Control and Prevention (CDC), people with long COVID have a range of new or ongoing symptoms that can last weeks or months after they are infected with the virus that causes COVID-19 and that can worsen with physical or mental activity. 8 (#footnote8_6aqr500)

covid19/index.html (https://www.hhs.gov/civil-rights/for-providers/civil-rights-covid19/index.html) .

- If you believe that an entity covered by HHS civil rights laws has violated your rights protected under these authorities, you may file a complaint at https://www.hhs.gov/ocr/complaints/index.html (https://www.hhs.gov/ocr/complaints/index.html) .

*Get Complaint*

- The Civil Rights Division of the Department of Justice has the following page on its ADA.gov website that discusses topics related to COVID-19 and the ADA:  https://www.ada.gov/emerg_prep.html (https://www.ada.gov/emerg_prep.html) .

    - If you believe that you or another person has been discriminated against by an entity covered by the ADA, you may file a complaint with the Disability Rights Section (DRS) in the Department of Justice. Information about how to file a complaint is available at https://www.ada.gov/fact_on_complaint.htm (https://www.ada.gov/fact_on_complaint.htm) .

- CDC's website has the following page on post-COVID conditions, which discusses long COVID: https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects.html (https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects.html) .

- The Administration for Community Living's document, "How ACL's Disability and Aging Networks Can Help People with Long COVID," provides information on resources and programs to assist people with long COVID.  This document is available at https://acl.gov/sites/default/files/COVID19/ACL_LongCOVID.pdf – PDF (https://nam11.safelinks.protection.outlook.com/?url=https%3A%2F%2Facl.gov%2Fsites%2Fdefault%2Ffiles%2FCOVID19%2FACL_LongCOVID.pdf&data=04%7C01%7C%7Cb3bb0963afa1432ca27c08d54e0058d2%7C5aa178fd9f440f68bf28481ead25b37%7C0%7C0%7C637525587012053867%7CUnknown%7CTWFpbGZsb3d8eyJWIjoiMC4wLjAwMDAiLCJQIjoiV2luMzIiLCJBTiI6Ik1haWwiLCJXVCI6Mn0%3D%7C1000&sdata=RTTYxXAPc1IFuaak53A2eVyyU%2Fct,IJV7qTCzrxrd5E8%3D&reserved=0) .

- While employment is outside of the scope of this guidance document, individuals who wish to learn more about COVID-19 and employment can visit the following Equal Employment Opportunity Commission page, which provides COVID-19 information and resources: www.eeoc.gov/coronavirus (http://www.eeoc.gov/coronavirus) .

    - The EEOC's main COVID-19 publication, *What You Should Know about COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, is available at: https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws) .

    - For information about filing an employment discrimination charge, see https://www.eeoc.gov/filing-charge-discrimination (https://www.eeoc.gov/filing-charge-discrimination) .

RECEIVED
OCT 2 5 2023

RECEIVED
HODAR
SEP 1 3 2023

A physical impairment includes any physiological disorder or condition affecting one or more body systems, including, among others, the neurological, respiratory, cardiovascular, and circulatory systems. A mental impairment includes any mental or psychological disorder, such as an emotional or mental illness.11 (#footnote11_9fh1igk)

Long COVID is a physiological condition affecting one or more body systems. For example, some people with long COVID experience:

- Lung damage

- Heart damage, including inflammation of the heart muscle

- Kidney damage

- Neurological damage

- Damage to the circulatory system resulting in poor blood flow

- Lingering emotional illness and other mental health conditions

Accordingly, long COVID is a physical or mental impairment under the ADA, Section 504, and Section 1557.12 (#footnote12_x6e1azh)

**b. Long COVID can substantially limit one or more major life activities**

"Major life activities" include a wide range of activities, such as caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, writing, communicating, interacting with others, and working. The term also includes the operation of a major bodily function, such as the functions of the immune system, cardiovascular system, neurological system, circulatory system, or the operation of an organ.

The term "substantially limits" is construed broadly under these laws and should not demand extensive analysis. The impairment does not need to prevent or significantly restrict an individual from performing a major life activity, and the limitations do not need to be severe, permanent, or long-term. Whether an individual with long COVID is substantially limited in a major bodily function or other major life activity is determined without the benefit of any medication, treatment, or other measures used by the individual to lessen or compensate for symptoms. Even if the impairment comes and goes, it is considered a disability if it would substantially limit a major life activity when the impairment is active.

Long COVID can substantially limit a major life activity. The situations in which an individual with long COVID might be substantially limited in a major life activity are diverse. Among possible examples, some include:

**Office for Civil Rights Headquarters**

U.S. Department of Health & Human Services
200 Independence Avenue, S.W.
Washington, D.C. 20201
Toll Free Call Center: 1-800-368-1019
TTD Number: 1-800-537-7697

RECEIVED
OCT 2 5 2022
HOGO


RECEIVED
HOCAR
SEP 1 9 2022

# EXHIBIT "F" 1-2

11-1-2022 VAD

**TREAT AS ORIGINAL**

**REASONABLE ACCOMMODATION PANEL (RAP) RESPONSE**

| | | |
|---|---|---|
| **Initial RAP Meeting Date:** 2/17/2022 | **Date IAC 1824 Received:** 2/10/2022 | **1824 Log Number:** 164451485539 |
| **Inmate's Name:** Williams, Brian | **CDCR #:** J62961   **DPP:** N/A | **Housing:** CW 112L |

**RAP Staff Present:** ADAC AW C. Freeman; HCAU CPT (A) M. Garcia; P&S R. Anderson; Mental Health Representative D. Sirkin MD; Education Representative D. Halbrook; Appeals Representative E. Medina; ADA CCI L. Macias; Health Care Grievance Coordinator M. Votaw; HCCA R. Catrina; HCAU OT N. Dalida; ADAC OT V. Esparza

**Summary of Inmate's 1824 Request:** Inmate Williams states he has shortness of breath, fatigue, dizziness, and heart palpitations that he believes to be connected with his Covid infection. He states he also has excruciating pain navigating to the upper bunk. Inmate Williams is requesting:

    1) An explanation for his heart palpitations.
    2) A low bunk.

---

**Interim Accommodation:**

☒ Accommodation provided: Inmate Williams was interviewed on February 10, 2022, during which time he verified that he has access to all programs, services, and activities. Inmate Williams was also advised that he can utilize ADA workers, as needed. Custody verified that he was in possession of his Durable Medical Equipment (DME) and these were serviceable. Inmate Williams stated he has health issues since his Covid-19 infection. He stated CTF doctors do not want to send him to an outside doctor/specialist. Inmate Williams stated that when he reached to the top bunk he gets severe pain in his legs. He states his pain and breathing difficulties are so bad he spends much of his time in bed. Custody provided an interim accommodation and he was provided a low bunk pending the Reasonable Accommodation Panel (RAP) review.

---

**RAP RESPONSE:**

On February 17, 2022, the RAP reviewed your CDCR 1824 Reasonable Accommodation Request. The Health Care Representative provided the RAP with a Disability Verification Process (DVP) Worksheet indicating that:

    1) Your PCP last evaluated you on February 16, 2022. Your clinical exam and EKG showed no sign of acute coronary syndrome. You will continue a medical work-up for your reported palpitations and chest pains. Your PCP is working to consult with an Endocrinologist to rule out thyroid dysfunction contributing to your cardiac symptoms. A thyroid ultrasound has been ordered to rule out a thyroid nodule and an order has also been placed for a 14-day heart monitor.

    2) Your CDCR 7410 from July 18, 2019, was reviewed and is still medically appropriate. There is no medical indication for a low bunk accommodation at this time. (See attached California Correctional Health Care Services Comprehensive Accommodation Formulary regarding Bottom Bunk Guidelines, July 2021).

**Direction if dissatisfied:**
If you disagree with this decision and want to file an appeal, be sure to attach a copy of this response along with your CDCR 1824 as supporting documents. If you disagree with a health care decision made prior to or during the CDCR 1824 process, complete a *blue* CDCR 602 Health Care Grievance form. If you disagree with any other RAP decision, complete a *green* CDCR 602.

 

 

_____
**AW C. Freeman**
**ADA Coordinator/Designee**

_____
**Signature**

RECEIVED
CTF
APR 0 4 2022
4CGO

**Date sent to inmate:**   FEB 2 8 2022

RECEIVED
HCCAB
DEC 0 2 2022

RAP Response - rev 08-17-17.docx



TREAT AS ORIGINAL



CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES

| Bottom Bunk |
|---|
| **Medical Necessity Guidelines** |

- Patients with a documented motor seizure in the last year or a reduction or change of seizure medication within the last six months
- Post operation/post injury; abdominal, chest, or back surgery within the last six months
- Severe orthopedic conditions of hips, knees, ankles, feet or upper extremity
- Acute fractures of long bones and/or torso
- Severe mobility restrictions and uses an assistive device other than a wheelchair to ambulate, and cannot walk up or down stairs because of the disability
- Severe vision impairment which is not correctable to better than 20/200 with corrective lenses in at least one eye (history of retinal detachment)
- Dementia and all etiologies
- Individual requires relatively level terrain/path of travel accommodation to ambulate due to mobility or health concerns which substantially limit walking
- Osteoporosis with a history of two long bone fractures
- Diagnosed disorder or treatment affecting equilibrium
- Ataxia/neurological impairment/Parkinson
- Amputation or severe weakness of upper or lower extremity
- Serious heart conditions/COPD (New York Heart Association, class 3 or O2 Dependent)
- Severe mobility restrictions but only uses a wheelchair intermittently as an accommodation to ambulate outside of cell/bed area
- Severe mobility restrictions and requires a full time wheelchair accommodation to ambulate in and out of cell/bed area
- Pregnancy
- Patients on anticoagulant therapy (low bunk can be offered, but is not mandatory)



RECEIVED
CTF
APR 0 4 2022
HCGO



EXHIBIT "G"1-2

 **CALIFORNIA CORRECTIONAL**
# HEALTH CARE SERVICES


### Headquarters' Level Response

**Closing Date:**    FEB 1 4 2023

**To:**        WILLIAMS, BRIAN (J62961)
Correctional Training Facility
P.O. Box 686
Soledad, CA 93960-0686

**From:**     California Correctional Health Care Services
Health Care Correspondence and Appeals Branch
P.O. Box 588500
Elk Grove, CA 95758

**Tracking #:**   CTF HC 22000194

## RULES AND REGULATIONS
The rules governing these issues are:  California Code of Regulations, Title 15; Health Care Department
Operations Manual; Mental Health Services Delivery System Program Guide; California Department of
Corrections and Rehabilitation Department Operations Manual.

## HEALTH CARE GRIEVANCE APPEAL SUMMARY
In your CDCR 602 HC, Health Care Grievance, you explained the decision, action, condition, omission, policy,
or regulation that has had a material adverse effect upon your health or welfare for which you seek
administrative remedy.

| **Issue** | | **Description** |
|---|---|---|
| Issue: | ADA ( Disagreement with RAP Decision ) | Disagreement with Reasonable Accommodation Panel (RAP) Response RAP decision 164451485539. |
| Issue: | Chrono Issues ( Bottom Bunk ) | Low bunk accommodation. |

## HEADQUARTERS' LEVEL DISPOSITION

[X] No intervention.        [ ] Intervention.

## BASIS FOR HEADQUARTERS' LEVEL DISPOSITION
Your health care grievance package and health record, and all pertinent departmental policies and procedures
were reviewed. These records indicate:
- You disagree with the Reasonable Accommodation Panel (RAP) Response, 1824 Log Number
  164451485539.
- The Institutional Level Response adequately addressed your health care grievance issue and is sustained
  at the headquarters' level of review.
- There is no recent documentation that you have attempted to access health care services utilizing the
  approved processes for concerns related to your functionality or inability to perform your activities of

Note 1:  The headquarters' level review is based on records available as of the date the Headquarters' Level Response is signed by the
reviewing authority.
Note 2:  The closing date reflects the closed, mailed/delivered date of the health care grievance.

daily living.

- Although the primary care provider did not document a medical indication warranting a lower bunk accommodation, you are currently assigned to a lower bunk.
- If you have additional health care needs, you are advised to utilize approved processes to access health care services in accordance with California Correctional Health Care Services policy.

Per the Health Care Department Operations Manual, Section 3.6.2, Comprehensive Accommodation, accommodations designated as permanent do not require further review or renewal. The accommodation may be revised or removed by the provider as indicated by the patient's status. The accommodation may be updated or rescinded at any time, even if previously written as permanent.

While the health care grievance process is a means of setting forth your health care concerns, it is not a substitute for direct communication about your health with your health care providers. You are encouraged to continue your care with your assigned health care providers and share with them new or additional clinical information about your conditions that you believe may affect your care. However, California law directs your health care providers to offer and provide only the care they determine to be currently medically or clinically necessary for you, in accordance with appropriate policies and procedures. Previous orders from other health care facilities or staff, input from health care consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current health care providers.

This decision exhausts your administrative remedies.

_____
S. Gates, Chief
Health Care Correspondence and Appeals Branch
Policy and Risk Management Services
California Correctional Health Care Services

February 9, 2023
_____
Reviewed and Signed Date

Note 1:  The headquarters' level review is based on records available as of the date the Headquarters' Level Response is signed by the reviewing authority.
Note 2:  The closing date reflects the closed, mailed/delivered date of the health care grievance.

CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**

P.O. Box 588500
Elk Grove, CA  95758