United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRIAN WILLIAMS,
Plaintiff,

v.

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATIONS,
Defendant.

Case No. 23-cv-03584 -NW

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: ECF No. 32

Plaintiff Brian Williams, a *pro se* state prisoner, filed this civil rights lawsuit alleging that Defendant California Department of Corrections and Rehabilitation ("CDCR") violated the Americans with Disabilities Act ("ADA") when it failed to provide him with a permanent lower bunk accommodation. *See generally* ECF No. 16. On April 30, 2026, Defendants filed a motion for summary judgment, which is now fully briefed. *See* ECF Nos. 32, 34, 37. For the reasons discussed below, the motion for summary judgment is **DENIED**.

## I. BACKGROUND

### A. Plaintiff's Complaint

As relevant, Williams alleges that CDCR inappropriately denied his reasonable accommodation request for a permanent lower bunk. *See* ECF No. 16.[1] Specifically, Williams states that he suffers from symptoms of Long COVID, including shortness of breath, fatigue, dizziness when standing, and heart palpitations. As a result, Williams spends extended amounts of time in bed. Williams also states that he experiences "severe pain and breathing difficulties" when

[1] All factual allegations in this section are from the operative Complaint. *See* ECF No. 16.

United States District Court
Northern District of California

he reaches for the top bunk, which led him to request a lower bunk accommodation. ECF No. 16 at 4.

Although Williams was provided with a temporary accommodation while his request was reviewed by his medical provider and other officials, CTF's Reasonable Accommodation Panel ("RAP") eventually denied his request for accommodation. Williams challenged the denial of his reasonable accommodation request, arguing that he was disabled because his symptoms limited his major life activities, including standing, walking, and bending. Williams received an Institutional Level Response on May 27, 2022, notifying him that there would be no intervention based on his most recent medical evaluation and relevant guidelines, which indicated that he did not meet the criteria for a lower bunk accommodation. In a February 14, 2023 Headquarters Level Response to Williams' grievance, CCHCS upheld the RAP's decision, concluding the RAP and Institutional Level Response addressed his concerns, and noting that "[t]here is no recent documentation that [Williams] . . . attempted to access health care services . . . for concerns related to [his] functionality or inability to perform [his] activities of daily living." ECF No. 16 at 43–44. But while Williams was exhausting his grievances regarding the denial of his reasonable accommodation request, he was twice issued rule violation reports and assessed disciplinary penalties based on his refusal to move to cells without a lower bunk assignment.

**B. CDCR's Evidence**

CDCR provides several declarations and medical records in support of summary judgment. *See generally*, ECF No. 32. The Court briefly summarizes relevant portions of these exhibits below.

**1. RAP Process**

CDCR provides two nearly identical declarations from two members of the RAP at the time of the challenged denial: R. Anderson, D.O., a certified Doctor of Osteopathic Medicine, and C. Freeman, the ADA Coordinator at CTF. *See* ECF Nos. 32-2 & 32-3. Each declaration explains that CDCR receives reasonable accommodation requests through CDCR Form 1824, which can be submitted by a prisoner or his or her medical provider. The prisoner's medical provider is required to consider whether an accommodation is medically warranted and, if so, must document

the disability-related accommodation in a medical chrono.[2] The medical chrono must include the nature of the accommodation, issue date, and length of time the chrono is effective. Where an accommodation is "permanent[,]" or lasts longer than six months, the accommodation must be reviewed annually. ECF No. 32-2 at 2. Medical providers may consider California Correctional Health Care Services' Comprehensive Accommodation Formulary Guidelines ("CCHCS guidelines")—which identify the criteria used to determine whether an incarcerated person meets the medical necessity to qualify for an accommodation—or request a non-formulary accommodation when a patient does not have a condition identified in the formulary, but the provider believes that a particular accommodation is appropriate. *Id*.

Following the medical provider's determination, the RAP considers the prisoner's request. The RAP has access to prisoners' medical records and grievances, and may interview custody staff or the prisoner regarding the prisoner's need for an accommodation. If a prisoner disagrees with the RAP's decision, he or she may file a grievance.

**2. Plaintiff's Reasonable Accommodation Request**

Williams submitted a reasonable accommodation request on February 10, 2022. *See* ECF No. 32-2 at 4. On the same date, a correctional officer interviewed Williams, who informed the officer about his physical symptoms: shortness of breath, fatigue, dizziness, heart palpitations, and severe pain when reaching for the top bunk. *See* ECF No. 32-3 at 6. Williams was provided with a temporary reasonable accommodation while the RAP reviewed his request. On February 16, 2022, nurse practitioner Okeke met with Williams to evaluate his request for a lower bunk accommodation. According to medical records from the visit, Williams told Okeke that he was experiencing intermittent palpitations and left chest pain that was sometimes triggered while he was at rest or reaching out to grab things, but otherwise denied "shortness of breath, dyspnea on exertion, abdominal pain, nausea, vomiting . . . [or] weakness in the extremities or dizziness." ECF No. 32-2 at 13. The pain allegedly lasted between a few seconds to one minute before going away. Okeke noted that Williams' EKG was "nondiagnostic[,]" and Williams showed no sign of

[2] Within CDCR, a "chrono" refers to various forms "used to document information about inmates and inmates' behavior." *In re Cabrera*, 216 Cal. App. 4th 1522, 1526 n.4 (2013).

acute coronary syndrome. *Id.* In a declaration, Okeke explains that she denied Williams' request for a lower bunk accommodation after she determined that such accommodation was not medically necessary under the CCHCS guidelines in effect at the time, or for any other non-listed medical reasons. She also referred Williams to further treatment by cardiology and endocrinology specialists to rule out the possibility of thyroid dysfunction to Williams' symptoms and prescribed Williams a fourteen-day "zio patch study to monitor [his] heart." ECF No. 32-4 at 3. The outcome of the zio-patch study is unclear from the record.

On February 17, 2022, the RAP reviewed Williams' reasonable accommodation request. In doing so, it considered notes from the February 10, 2022 interim accommodation interview, medical care progress notes from Williams' visit with Okeke, Williams' Disability Verification Process Worksheets, and observations from correctional staff assigned to Williams' housing unit regarding his condition. The RAP denied Williams' request on February 28, 2022. Per Anderson's declaration, the denial was based on Okeke's evaluation that a lower bunk accommodation was not medically necessary, unspecified staff observations, and Williams' statements during his February 10, 2022 interview, during which Williams stated that his durable medical equipment ("DME")—which included glasses and a permanent therapy handball—was intact and serviceable, and that he had access to all programs, services, and activities at CTF despite his lack of lower bunk assignment. *See* ECF No. 32-2 at 5.

### 3. CCHCS Guidelines

Williams made the challenged request for a reasonable accommodation in February 2022. At the time, the CCHCS Guidelines in place stated that the following medical conditions showed medical necessity for a lower bunk assignment:

> [1.] Patients with a documented motor seizure in the last year or a reduction or change of seizure medication within the last six months
> [2.] Post operation/post injury; abdominal, chest, or back surgery within the last six months
> [3.] Severe orthopedic conditions of hips, knees, ankles, feet or upper extremity
> [4.] Acute fractures of long bones and/or torso
> [5.] Severe mobility restrictions and uses an assistive device other than a wheelchair to ambulate, and cannot walk up or down stairs because of the disability
> [6.] Severe vision impairment which is not correctable to better than

> 20/200 with corrective lenses in at least one eye (history of retinal detachment)
> [7.] Dementia and all etiologies
> [8.] Individual requires relatively level terrain/path of travel accommodation to ambulate due to mobility or health concerns which substantially limit walking
> [9.] Osteoporosis with a history of two long bone fractures
> [10.] Diagnosed disorder or treatment affecting equilibrium
> [11.] Ataxia/neurological impairment/Parkinson
> [12.] Amputation or severe weakness of upper or lower extremity
> [13.] Serious heart conditions/COPD . . .
> [14.] Severe mobility restrictions but only uses a wheelchair intermittently as an accommodation to ambulate outside of cell/bed area
> [15.] Severe mobility restrictions and requires a full time wheelchair accommodation . . .
> [16.] Pregnancy
> [17.] Patients on anticoagulant therapy

ECF No. 32-2 at 10.

### C. Dr. Anderson Declaration

Dr. Anderson was part of Williams' RAP at the time his reasonable accommodation request was denied. In a declaration, Dr. Anderson noted agreement with Okeke's conclusion that Williams did not have a medical necessity for a lower bunk accommodation at the time he requested one. *See* ECF No. 32-2 at 5.

### D. Plaintiff's Exhibits

Williams provides several relevant exhibits with his filings, which the Court briefly summarizes below. In his opposition to the motion for summary judgment, Williams provides his own declaration; a copy of a printout outlining guidance on Long COVID as a disability under the ADA; medical records showing that Williams was diagnosed with other medical conditions—including chronic kidney disease, hypertension, and hyperthyroidism between October 2023 and February 2024; a copy of an April 2026 ADA accommodation granting him a permanent lower bunk accommodation; and declarations from two prisoners detailing their complaints regarding the medical care they received from Okeke.[3] In his own declaration, Williams states that he

[3] To the extent that Williams attempts to raise claims on behalf of other prisoners, the Court will not consider those claims because *pro se* prisoner-plaintiffs may not bring claims on other prisoners' behalf. *See McShane v. United States*, 366 F.2d 286, 288 (9th Cir. 1966) (noting that a plaintiff's privilege to appear *in propria persona* is a "privilege . . . personal to him. He has no authority to appear as an attorney for others.").

contracted COVID-19 in 2021, and that he thereafter began complaining to his primary care provider about "bouts with dizziness upon standing, shortness of breath, irregular heart palpitations, and the problems [he] was having with bending and reaching." *Id.* at 2. He also states that on April 10, 2026, Dr. Judith Garcia issued him a permanent lower bunk accommodation, citing "'[s]pine or extremity range of motion restriction which prohibits ability to climb to upper bunk.'" *Id.*; *see also id.* at 18–20.

## II. LEGAL STANDARD

A court may grant summary judgment on any issue, claim, or defense if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may satisfy this burden in different ways depending on whether it has the burden of proof at trial. If the moving party bears the burden of proof at trial, it must cite to "particular parts of materials in the record" to demonstrate that no reasonable trier of fact could find for the non-moving party. Fed. R. Civ. P. 56(c)(1)(A). By contrast, if the non-moving party bears the burden of proof at trial, the moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B).

Once the moving party has met its burden, the burden shifts to the non-moving party to designate specific facts showing that there is a genuine dispute. *Celotex*, 477 U.S. at 324. To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to survive summary judgment. *Anderson*, 477 U.S. at 252. Instead, "there must be evidence on which the jury could reasonably find for the [non-moving

party]." *Id.*

In determining whether there is a genuine dispute of material fact, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). The Court does not "engage in credibility determinations or weigh evidence." *Munden v. Stewart Tit. Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). "The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen*, 237 F.3d at 1031.

## III. DISCUSSION

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. State prison operators such as CDCR "fall squarely within the statutory definition of 'public entity.'" *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (quoting 42 U.S.C. § 12131(1)(B)).

To prove that a public entity violated Title II, a plaintiff must show that "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Duvall v. Cnty. Of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001) (internal quotation marks omitted). To recover monetary damages for a violation of Title II, the plaintiff must also show that the public entity defendant engaged in intentional discrimination, or acted with deliberate indifference. *Id.* at 1138.

Here, CDCR argues that it is entitled to summary judgment on the grounds that (1) Williams did not have a qualifying disability under the ADA, (2) CDCR did not engage in discrimination against Williams, and (3) Williams cannot show intentional discrimination such that he is entitled to monetary damages. *See* ECF No. 32 at 13–15. The Court discusses each argument below.

**A. Qualifying Disability**

As recently noted by the Court of Appeals for the Ninth Circuit,

> The ADA generally defines "disability" in two parts: first, the disability must be "a physical or mental impairment"; second, the impairment must be one that "substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).[] This definition must be "construed in favor of broad coverage." *Id.* § 12102(4)(A). "[T]he question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis."

*Adom v. Cal. Dep't of Corr. and Rehabilitation*, _ F.4th __, 2026 WL 2639549, at *6 (9th Cir. 2026) (footnote omitted). Williams has provided evidence of his repeated complaints, through his reasonable accommodation request and subsequent grievances challenging the denial of his request, noting that he was experiencing heart palpitations, shortness of breath, dizziness, and "excruciating[] pain[]" (ECF No. 16 at 16) when he reached for or climbed to the top bunk, all of which appear to fall under the category of physical impairments. *See Adom*, 2026 WL 2639549, at *6 ("An impairment is '[a]ny physiological disorder or condition . . . affecting one or more body systems.'"). In addition, a jury could reasonably find that these impairments affected Williams' major life activities, such as caring for oneself, which includes "sleeping," "reaching," and "breathing." *See* 28 C.F.R. § 35.108(c)(1)(i). Although CDCR points to conflicting evidence regarding Williams' physical symptoms in arguing that Williams did not have a disability, given that the Court must make all reasonable inferences in Williams' favor at this stage and must, additionally, interpret the definition of a disability "in favor of broad coverage," the Court concludes that a jury could reasonably find that Williams suffered from a disability. 42 U.S.C. § 12102(4)(A); *see Torres*, 648 F.3d at 1123.

**B. Discrimination**

CDCR also argues that Williams has not shown discrimination. Because different standards apply to his claims of injunctive and monetary relief, the Court discusses each claim below.

**1. Injunctive Relief**

At the outset, the Court notes that to the extent that Williams now asserts he is entitled to injunctive relief under Title II of the ADA, his claim is moot given his new permanent lower bunk

United States District Court
Northern District of California

chrono issued in April 2026. *See* ECF No. 34 at 19–20. It is well established that requests for injunctive relief are moot if there is no "present harm left to enjoin." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017) (citation modified). Here, Williams seeks injunctive relief in the form of an order requiring CDCR to permanently provide him with a lower bunk accommodation. But the record makes clear that Williams already was issued a permanent lower bunk accommodation. Williams' claim for injunctive relief under Title II of the ADA is therefore moot because there is no "present harm left to enjoin." *Bayer*, 861 F.3d at 864.

To the extent that Williams argues that he is entitled to additional injunctive relief because CDCR may revise or remove his permanent lower bunk accommodation, the Court notes that there is no evidence in the record showing that Williams' current "'[s]pine or extremity range of motion restriction which prohibits ability to climb to upper bunk[,]'" ECF No. 34-2 at 2, is expected to change in any significant manner such that there is a reasonable expectation that the accommodation will be revised or removed in the future without medical evaluation or justification. *See Davis v. Cal. Dep't of Corr. and Rehabilitation*, No. 23-cv-05999-CPB, 2026 WL 946376, at *4 (N.D. Cal. Apr. 8, 2026) (denying injunctive relief as moot where permanent accommodation already provided by CDCR); *cf. Brach v. Newsom*, 38 F.4th 6, 12 (9th Cir. 2022) (exception to mootness has no force if challenged behavior cannot reasonably be expected to recur). If the accommodation is removed, however, Williams is free to file a new action seeking injunctive relief under Title II of the ADA.

**2. Monetary Damages**

Williams also seeks monetary damages. Monetary damages are not available under Title II of the ADA absent a showing of intentional discrimination, or deliberate indifference.[4] *Duvall*, 260 F.3d at 1138–39. Deliberate indifference requires: (1) the entity's knowledge that harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood. *Id.* at

[4] In his opposition to the motion for summary judgment, Williams argues that Okeke showed deliberate indifference to his medical needs by failing to properly advise him of his diagnoses for various medical conditions. But the only remaining claim in this matter is his ADA claim against CDCR. *See* ECF No. 21 (dismissing all other claims and defendants based on Williams' failure to file an amended complaint addressing deficiencies identified by the Court during screening).

United States District Court
Northern District of California

1139. The first prong is satisfied when the plaintiff identifies a specific, reasonable, and necessary accommodation that the entity has failed to provide, and the plaintiff notifies the public entity of the need for accommodation, or the need is obvious even if no request is made or required by statute or regulation. *Id.* The second prong is satisfied by showing that the entity deliberately failed to fulfill its duty to act in response to a request for accommodation. *Id.* at 1139–40. The public entity must "gather sufficient information from the disabled individual and qualified experts to determine what accommodations are necessary." *Id.* (citation omitted). The entity must also "consider the particular individual's needs when conducting its investigation." *Id.* A plaintiff seeking monetary damages must show more than just negligence—the entity's failure to act must be deliberate. *Id.*

Here, Williams identifies a specific accommodation that he requested from CDCR—a permanent lower bunk accommodation—which he argued was medically necessary. It is well-established that denial of reasonable accommodation for a basic necessity, such as an accessible bed, may be considered discrimination under Title II of the ADA. *See Armstrong v. Brown*, 732 F.3d 955, 957 (9th Cir. 2013); *see Adom*, 2026 WL 2639549, at *8 ("When a person with a disability can access a public entity's services only by experiencing pain . . . that access is likely not meaningful."). Williams therefore meets the first prong of the *Duvall* test. *Duvall*, 260 F.3d at 1139.

As to the second prong, CDCR argues that Okeke's evaluation concluding that Williams was not suffering from shortness of breath, dizziness, or acute coronary syndrome, and the subsequent RAP decision agreeing with her evaluation, show that it was not deliberately indifferent because it undertook a sufficient investigation into Williams' request before denying it. The Court agrees that CDCR has provided sufficient evidence so a jury may reasonably conclude as much. But Williams also provides sufficient evidence that, viewed in the light most favorable to him, could show CDCR failed to fulfill its duty to act in response to his request for a reasonable accommodation. For example, Williams' exhibits show that CDCR failed to address the majority of his alleged symptoms during their review of his request. Namely, although reviewers of Williams' request acknowledged his complaints about chest pain, Williams' consistent complaints

regarding shortness of breath, dizziness, and severe or "excruciating[]" pain when reaching for or climbing to the top bunk were not discussed by Okeke, the RAP, or CCHCS in their denials of his reasonable accommodation request. ECF No. 16 at 16. Notably, the declarations submitted by CDCR in support of summary judgment also fail to explain why Williams' combined symptoms would not warrant a lower bunk accommodation.[5] Based on this evidence, a jury could reasonably conclude that CDCR's investigation was inadequate.

Moreover, Williams has provided evidence that, viewed in the light most favorable to him, could support a verdict that CDCR acted with deliberate indifference. Williams' exhibits show that he repeatedly complained about his need for a lower bunk accommodation between 2022 and 2023, including through his challenges to the denial of his reasonable accommodation request and during disciplinary hearings held after he twice refused to move to a top bunk. *See* ECF No. 16 at 15–34. CDCR did not at any point explain why his request was unreasonable or unfeasible, and CCHCS's responses to Williams' grievances, in which it noted that Williams was already assigned to a lower bunk, could support a finding that CDCR chose not to accommodate his request despite being able to do so. *Id.* at 44. Finally, Williams provides evidence that he was eventually granted a lower bunk accommodation based on his "'[s]pine or extremity range of motion restriction which prohibits ability to climb to upper bunk,'" a condition that arguably existed at the time Williams made his initial request for reasonable accommodation, and which CDCR does not explain despite Williams' repeated citations to his April 2026 accommodation in his opposition to summary judgment. ECF No. 34-1 at 2. Viewing this evidence in the light most favorable to Williams, the Court concludes he has met his burden of showing a triable issue of fact exists as to whether CDCR acted with deliberate indifference in denying his request for reasonable accommodation.[6] *See Adom*, 2026 WL 2639549 (reversing summary judgment where CDCR

---

[5] None of the exhibits provided by the parties appear to suggest that medical staff determined that Williams was malingering or otherwise fabricating his symptoms, and Williams denies ever telling Okeke that he was not experiencing shortness of breath and dizziness.

[6] CDCR also argues in its motion that it is entitled to qualified immunity, but as a public entity, it is not entitled to assert this defense. *See Armstrong v. Whalen*, 465 F. Supp. 3d 1165, 1175 (W.D. Wash. 2020) ("[Q]ualified immunity does not apply to Title II claims because qualified immunity is a defense afforded to officials sued in their individual capacities and Title II [of the ADA]

revoked mobility-impaired prisoner's chrono for incontinence supplies and refused to return them based on his lack of medical diagnosis at the time despite prisoner's repeated complaints about his incontinence).

## IV. CONCLUSION

The Court orders as follows:

1. CDCR's motion for summary judgment (ECF No. 32) is **DENIED**.
2. The Northern District of California has established a Pro Se Prisoner Settlement Program. Certain prisoner civil rights cases may be referred to a Magistrate Judge for a settlement conference. The Court finds that a referral is in order as to the remaining ADA claim. Thus, this case is **REFERRED** to Magistrate Judge Robert M. Illman for a settlement conference. Judge Illman shall coordinate a time and date for the conference with all interested parties and/or their representatives, and file a report within ten (10) days after the conclusion of the conference. The Clerk shall provide a copy of this Order to Judge Illman.
3. If no settlement is reached, this matter will proceed to trial.
4. This Order terminates ECF No. 32.

**IT IS SO ORDERED.**

Dated: September 28, 2026

Noël Wise
United States District Judge

---

authorizes suits against public entities, not individuals.") (citation modified); *see also Owen v. City of Independence*, 445 U.S. 622, 655–56 (1980) (holding that governmental entities are not entitled to qualified immunity).